# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**HEATON CONTRACT MANUFACTURING, LLC,**
    **Plaintiff,**

    v.                                                        Case No. 20-CV-1875

**NOBLE.COM, INC. d/b/a/ NOBLE SUPPLY & LOGISTICS,**
    **Defendant.**

---

## DECISION AND ORDER

Plaintiff Heaton Contract Manufacturing, LLC, commenced this action for breach of contract under the diversity jurisdiction against Noble.com, Inc. d/b/a Noble Supply & Logistics. Before me now is Noble's motion to dismiss the complaint for improper venue, *see* Fed. R. Civ. P. 12(b)(3), or, in the alternative, to transfer venue to the United States District Court for the District of Massachusetts, *see* 28 U.S.C. § 1404(a).

### I. BACKGROUND

Heaton Contract Manufacturing is a limited liability company organized under Wisconsin law whose sole member is Michael Lauria, a citizen of Wisconsin who resides within the Eastern District of Wisconsin. Heaton Manufacturing "is engaged in warehousing, inventory control, logistics, and custom manufacturing and assembly." Aff. of Michael Lauria ¶ 3.[1] The company's warehousing and manufacturing facilities are in Port Washington, Wisconsin.

---

[1] I take the venue-related facts from the parties' affidavit and declaration. *See Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005) (on motion under Fed. R. Civ. P. 12(b)(3), a court may consider matters outside the pleadings). The material facts are

In the spring of 2020, Heaton Manufacturing advertised its ability to supply masks that were in high demand due to the COVID-19 pandemic, including N95 masks. On April 2, 2020, Nick Liolios, vice president of the "G-commerce" division of Noble, called Lauria to inquire about purchasing such masks. Noble is a Massachusetts corporation that maintains its principal place of business in Rockland, Massachusetts. Liolios placed the call to Lauria while Liolios was in Massachusetts and Lauria was in Wisconsin. After the call was over, Lauria prepared several quotes for the masks and emailed them to Liolios. On April 8, 2020, Liolios emailed Lauria and stated that his company intended to place an order for a large quantity of masks. On April 9, Liolios emailed a purchase order to Lauria for a total of 515,000 N95 masks, almost all of which were to be delivered to one of Noble's customers, a VA medical facility located in Hines, Illinois. The total purchase price was $2,332,641. On April 15, 2020, Noble wired a down payment on the order to Heaton Manufacturing's account with PNC Bank. Lauria states that Heaton Manufacturing dealt with PNC Bank through its branch located in Thiensville, Wisconsin.

To fulfill Noble's order, Heaton Manufacturing placed an order with its supplier in Middleburg, Pennsylvania. The supplier, in turn, ordered the masks from a manufacturer in China. On April 22, 2020, when the order was ready to be shipped from China, Lauria sent Noble an invoice for the balance of the payment. At this point, a dispute arose as to when Noble was required to pay the balance due on its order. Heaton believed that final payment was due before the masks left China, while Noble believed that payment wasn't due until the masks were shipped from Heaton's facilities in Port Washington. Eventually,

undisputed, and thus I will resolve the present motion without holding an evidentiary hearing.

however, this dispute was resolved when Noble decided to reduce its order to 154,000 masks, which its earlier down payment almost entirely covered.

The first shipment of masks from China arrived at Chicago's O'Hare airport on June 2, 2020. Lauria personally drove from Wisconsin to O'Hare to pick up the masks and deliver them to the VA facility in Hines, Illinois.

During the summer of 2020, Noble placed additional orders for masks with Heaton Manufacturing. A large quantity of these masks was intended to be delivered to the same VA facility in Illinois. In approximately September 2020, Noble placed an order for 90,000 masks to be delivered to the VA facility. Due to the size of the order, the masks were shipped from China by sea rather than air. They arrived at the Port of Los Angeles on November 10, 2020. On November 11, 2020, Lauria emailed an invoice to Noble for payment. Later in the day, Noble's counsel emailed Lauria and stated that if Heaton did not deliver the masks to the VA facility by November 20, 2020, the VA was likely to cancel the order and Noble would refuse to pay Heaton.

Heaton was unable to deliver the masks by November 20, and Noble refused to pay for them. On December 10, 2020, Lauria traveled to Chicago to pick up the lot of 90,000 masks. He brought the masks to Wisconsin and put them in storage in Heaton's warehouse in Port Washington.

On December 18, 2020, Heaton commenced the present action for breach of contract. Noble responded to the complaint by filing a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). In the alternative, Noble requests that I transfer the case to the United States District Court for the District of Massachusetts for the convenience of the parties and witnesses under 28 U.S.C. § 1404(a).

## II. DISCUSSION

**A.    Motion to Dismiss for Improper Venue**

In general, venue for civil actions in federal court is controlled by 28 U.S.C. § 1391. It provides that a civil action may be brought in: (1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to the action. 28 U.S.C. § 1391(b)(1)–(3). In the present case, Heaton contends that venue is proper under § 1391(b)(2) because a substantial part of the events or omissions giving rise to its claim occurred in the Eastern District of Wisconsin.

Initially, I note that, although Heaton does not assert that venue is proper under § 1391(b)(1) based on Noble's residence, it almost certainly is. Because Noble is a corporation, it is deemed to "reside" in any judicial district in which it is subject to personal jurisdiction with respect to the action in question. *See* 28 U.S.C. § 1392(c)(2). This suit arises out of Noble's purposefully contacting a company located in the Eastern District of Wisconsin and entering into a contract with that company, and so Noble is subject to personal jurisdiction in the Eastern District of Wisconsin with respect to the suit. *See Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012). Indeed, Noble has not moved for dismissal on personal-jurisdiction grounds and therefore has waived any objection to personal jurisdiction. *See* Fed. R. Civ. P. 12(h)(1)(A). Further, because Noble is the only

4

defendant, all defendants are residents of Wisconsin, which makes venue under § 1391(b)(1) proper.

In any event, venue is also proper under § 1392(b)(2). Noble contends that it is not because, it asserts, "the" substantial part of the events or omissions giving rise to the plaintiff's claim for breach of contract did not occur in this district. *See* Br. in Supp. at 5. Noble contends that the substantial part of the relevant events occurred in Massachusetts. However, under § 1391(b)(2), venue is proper in any district in which "a" substantial part of the relevant events or omissions occurred. Thus, "[s]ection 1391(b)(2) does not restrict venue to the district in which the 'most substantial' events or omissions giving rise to a claim occurred." *Daniel v. American Bd. of Emergency Medicine*, 428 F.3d 408, 432 (2d Cir. 2005). Rather, venue can be proper in more than one district. *Id.* Accordingly, even if a substantial part of the events or omissions giving rise to the claim occurred in Massachusetts, it would not follow that venue does not also lie in the Eastern District of Wisconsin.

Moreover, a substantial part of the events or omissions giving rise to the plaintiff's claim occurred in the Eastern District of Wisconsin. The plaintiff's claim is for breach of contract, and at least half of the acts relevant to the claim occurred in Wisconsin. During all negotiations, Heaton's representative, Lauria, communicated with Noble from his office or home in the Eastern District of Wisconsin. Once the parties' formed the contract, Lauria performed most of Heaton's obligations under the contract in Wisconsin by contacting Heaton's suppliers and communicating with Noble from his home or office in Wisconsin. Lauria also drove from Wisconsin to Illinois and back at least twice to pick up and/or deliver the masks that Noble had ordered. The masks that Noble refused to pay for are

currently stored in Heaton's warehouse in the Eastern District of Wisconsin.[2] These are all substantial events relevant to the plaintiff's claim, and therefore venue in this district is proper under § 1392(b)(2).

Noble contends that the above facts cannot create venue in Wisconsin because I must "focus[] on the activities of the defendant." Reply Br. at 2 (citing, among other cases, *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995)). But the language Noble cites, when read in the context of the opinions in which it appears, does not stand for the proposition that the plaintiff's activities must be excluded from any analysis of where a substantial part of the events or omissions giving rise to the claim occurred. In *Woodke*, the case that seems to have first used the "focus on the defendant" language, the plaintiff attempted to base venue for a trademark suit solely on his having resided in the district at the time the defendant allegedly infringed his trademark outside of the district. 70 F.3d at 985 ("We therefore reject [plaintiff's] argument that venue lies in the Northern District of Iowa simply because that was where he was residing when the passing off occurred."). The Eighth Circuit noted that the purpose of the venue statute was to protect defendants from being haled into a remote district having no relationship to the dispute. *Id.* It reasoned that if the plaintiff's having resided in the district at the time of the infringement could create venue, then the venue statute would allow defendants to be unfairly haled into districts that have no substantial connection to the suit. *Id.* Thus, the court held, the venue statute must be

---

[2] Noble contends that the presence of the masks in a Wisconsin warehouse is not relevant to venue because Heaton only put them there "in an effort to manufacture venue in this district." Br. in Supp. at 6. But once Noble refused to pay for the masks, where else would Heaton have stored them other than in its own warehouse? Clearly, Heaton's placing the masks in a warehouse in Wisconsin was done in the ordinary course of its business rather than as an attempt to manufacture venue.

6

interpreted "to require courts to focus on relevant activities of the defendant, not of the plaintiff." *Id.*

The Eighth Circuit's concern in *Woodke* was that allowing venue to be based on events that affect only the plaintiff could result in the defendant's being sued in a forum that had no connection to the suit. But this does not imply that a court may never consider the plaintiff's activities when determining where a substantial part of the events or omissions occurred. This is especially true when the claim involves a contract or another business transaction in which the parties communicated with each other from different locations. In such cases, many of the acts giving rise to the claim will involve both parties. For example, in the present case, the communications that resulted in the contract's formation and its subsequent performance occurred between Lauria and Liolios while each was located in a different district. Each event thus "occurred" in both districts, and nothing in the venue statute requires a court to pretend as though the event occurred only in the district in which the defendant was located. Giving weight to the plaintiff's location at the time of the communications and performance does not result in the defendant's being "haled into a remote district having no real relationship to the dispute." *Woodke*, 70 F.3d at 985. The district in which the plaintiff was located when it communicated with the defendant and performed its obligations under the contract has as much relationship to the claim as does the district in which the defendant was located at the time of the communications and in which it performed its own obligations.

For these reasons, I do not believe that the result in this case conflicts with *Woodke* and other cases which state that a court assessing venue under § 1392(b)(2) must focus on the activities of the defendant rather than the plaintiff. However, to the extent that it

7

does, I note that other circuits have declined to follow the Eighth Circuit on this point. In particular, the First Circuit has explicitly rejected *Woodke* and "join[ed] those courts that have chosen a more holistic view of the acts underlying a claim." *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 43 n.6 (1st Cir. 2001) (citing *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998); *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994); *Bates v. C&S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir. 1992)).

Accordingly, Noble's motion to dismiss this case for improper venue will be denied.

**B.**   **Motion to Transfer Venue for Convenience of Parties and Witnesses**

In the alternative, Noble contends that I should transfer venue to the District of Massachusetts under 28 U.S.C. § 1404(a). That statute provides in relevant part that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Heaton concedes that it could have brought this suit in the District of Massachusetts, and so the question is whether the case should be transferred there for the convenience of the parties and witnesses and the interest of justice.

With respect to the convenience evaluation, courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Other related factors include the location of material events and the relative ease of access to sources of proof. *Id.* The "interest of justice" is a separate element of the transfer analysis that relates to the efficient administration of the court system. *Id.* For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums, each court's relative

8

familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy. *Id.*

In the present case, none of the above factors weighs in favor of a transfer to the District of Massachusetts. This is a contract case in which each party negotiated and performed the contract in a different judicial district—the plaintiff in the Eastern District of Wisconsin and the defendant in the District of Massachusetts. The plaintiff's witnesses are located in Wisconsin and the defendant's are located in Massachusetts. It is unlikely that any physical evidence other than the parties' emails and related electronic communications will be relevant. Such evidence may be easily exchanged electronically no matter where this case is prosecuted. Thus, neither district is more convenient than the other. To be sure, the Eastern District of Wisconsin will be more convenient for the plaintiff and the District of Massachusetts will be more convenient for the defendant, but "shifting inconvenience from one party to another is not a sufficient basis for transfer." *Research Automation*, 626 F.3d at 978.

Noble does not contend that any of the "interest of justice" factors favor a transfer. And I do not see any reason why the interest of justice would warrant a transfer to the District of Massachusetts.

Accordingly, Noble's motion to transfer this case under § 1404(a) will be denied.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendant's motion to dismiss or transfer venue is **DENIED.**

Dated at Milwaukee, Wisconsin, this 28th day of May, 2021.

    s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge